UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FELICIA DAVIS,

        Plaintiff,

v.                                  Case No:  2:17-cv-682-FtM-38CM

BOSTON SCIENTIFIC
CORPORATION,

        Defendant.

_____/

**OPINION AND ORDER**[1]

This matter comes before the Court on Defendant Boston Scientific Corporation's

("Boston Scientific") Motion to Dismiss (Doc. 21) and Plaintiff Felicia Davis' ("Davis")

Response in Opposition (Doc. 33).  The matter is ripe for review.

**INTRODUCTION**

This is a product liability suit about Boston Scientific's permanent inferior vena

cava filter (the "Greenfield Filter").  The Greenfield Filter was created to prevent

pulmonary embolisms (Doc. 20 at ¶¶ 1, 29), which occur when a blood clot travels through

blood vessels like the inferior vena cava to block one of the pulmonary arteries in the

lungs.  (Doc. 20 at ¶ 20).  When clots form in deep leg veins, this condition is called deep

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

vein thrombosis.  (Doc. 20 at ¶ 20).  Patients at risk of deep vein thrombosis or pulmonary embolisms are often treated with permanent or retrievable inferior vena cava filters, such as the Greenfield Filter, which trap and filter blood clots.  (Doc. 20 at ¶¶ 23, 33, 36).

Davis alleges that studies show the beneficial effects of implanting permanent inferior vena cava filters are offset by recurrent deep vein thrombosis symptoms.  (Doc. 20 at ¶ 35).  She further alleges that long-term implantation of inferior vena cava filters can cause subsequent pulmonary embolisms.  (Doc. 20 at ¶ 29).  Because of these factors, medical device manufacturers have developed retrievable inferior vena cava filters.  (Doc. 20 at ¶¶ 35-36).  In 2010, the United States Food and Drug Administration warned against implanting inferior vena cava filters for extended periods of time due to their potential to cause health complications.  (Doc. 20 at ¶ 40).  It released another warning in 2014.  (Doc. 20 at ¶ 42).  Despite these notifications, Davis alleges Boston Scientific continued to market the Greenfield Filter for long-term use.  (Doc. 20 at ¶ 46).

## BACKGROUND

In September 2005, Davis suffered a pulmonary embolism.  (Doc. 20 at 24).  Based on the advice of an unnamed entity, she agreed to have the Greenfield Filter implanted in her right common femoral vein.  (Doc. 20 at ¶¶ 25-26).  A decade later, she was hospitalized for chest pain and diagnosed with bilateral segmental pulmonary emboli. (Doc. 20 at ¶ 28).  Almost two years after that, she was hospitalized again and diagnosed with deep vein thrombosis.  (Doc. 20 at ¶ 30).

Davis then sued Boston Scientific in state court.  (Doc. 2).  After the case was removed (Doc. 1), the Complaint was dismissed as a shotgun pleading.  (Doc. 19).  Davis filed an Amended Complaint, which deleted paragraphs that had previously incorporated

every preceding allegation and added nineteen pages of additional allegations.  (Doc. 20).  The Amended Complaint alleges the Greenfield Filter was defectively designed and manufactured.  (Doc. 20 at ¶ 59).  It further claims the Greenfield Filter was inadequately tested and had inadequate warnings, instructions, and labeling.  (Doc. 20 at ¶ 59).  Based on these allegations, Davis claims Boston Scientific is liable for: negligence (Count I), strict liability design defect (Count II), strict liability manufacturing defect (Count III), strict liability failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranty of merchantability (Count VI), breach of implied warranty of fitness (Count VII), fraudulent misrepresentation (Count VIII), fraudulent concealment (Count IX), negligent misrepresentation (Count X), and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count XI).  (Doc. 20 at ¶¶ 72-336).  Davis also seeks punitive damages.  (Doc. 20 at ¶¶ 337-339).  Now, Boston Scientific moves to dismiss.  (Doc. 21).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of a claim showing the pleader is entitled to relief.  The Rule's purpose is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted).

Fraud allegations are subject to heightened pleading standards under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud."  This means "a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (internal quotations

omitted).  Stated differently, "[t]his means who, what, when, where, and how: the first paragraph of any newspaper story." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).  But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).  These standards serve "an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 1370-71 (internal quotations omitted).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a pleading for failure to state a claim upon which relief can be granted.  This decision hinges on the *Twombly–Iqbal* plausibility standard, which requires a plaintiff to allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support a claim. *Twombly*, 550 U.S. at 556; *see also Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010).  At this stage, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  But acceptance is limited to well-pleaded factual allegations. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  A "the-defendant-unlawfully harmed me accusation" is insufficient.  *Iqbal*, 556 U.S. at 677.  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted).

## DISCUSSION

Boston Scientific's Motion to Dismiss is multifaceted.  It argues the Amended Complaint: (1) is an impermissible shotgun pleading; (2) is pled improvidently or

4

insufficiently; and (3) fails to adequately allege punitive damages.  Davis opposes.  The Court will address each argument in turn.

## A.      Shotgun Pleading

Boston Scientific argues the Amended Complaint should be dismissed as a shotgun pleading because the grounds for each claim cannot be discerned.  This argument fails.  The Eleventh Circuit has defined only four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

Here, the Amended Complaint differs from the original because it no longer incorporates each preceding allegation into each count.  Still, Boston Scientific argues it remains a shotgun pleading because Davis' addition of nineteen pages of allegations to the text of the original Complaint makes it difficult to understand the grounds for each claim.  But that argument does not fall within one of the Eleventh Circuit's four shotgun

pleading categories. Instead, it goes to Rule 8(a)(2)'s requirement for a "short and plain statement." Fed. R. Civ. P. 8(a)(2). Under that framework, "so long as it is minimally sufficient to put a defendant on notice of the claims against him[,] [a complaint] will not fail for mere surplusage." *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008). Though the Amended Complaint contains surplusage, that alone does not preclude Boston Scientific from understanding the claims lodged against it. The Amended Complaint does not fail as a shotgun pleading or under Rule 8(a)(2).

## B. Negligence

Count I alleges Boston Scientific is liable for negligence. The elements of a negligence claim are "(1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury." *Estate of Rotell ex rel. Rotell v. Kuehnle*, 38 So. 3d 783, 788 (Fla. 2d DCA 2010). Boston Scientific argues Count I should be dismissed because it does not plausibly satisfy the duty element. The Court disagrees.

Here, Davis alleges Boston Scientific had a duty to exercise reasonable care in the design, research, manufacture, marketing, testing, advertisement, supply, promotion, packaging, sale, and distribution of the Greenfield Filter. (Doc. 20 at ¶ 73). She claims Boston Scientific breached this duty because it knew or should have known the Greenfield Filter was unsafe when used on a long-term basis, and because it failed to exercise reasonable care in the product's design, manufacture, and marketing, and failed to accompany the product with adequate warnings. (Doc. 20 at ¶¶ 75-81, 87-88). Finally, Davis alleges she suffered injuries including pulmonary embolism and deep vein thrombosis as a result of Boston Scientific's actions or lack thereof. (Doc. 20 at ¶ 94).

Accepted as true, these allegations establish a plausible claim for negligence and Count I survives.

**C.      Strict Liability**

"Strict liability is defined as negligence as a matter of law or negligence per se; it relieves the plaintiff of the burden of proving specific acts of negligence." *Barrow v. Bristol–Myers Squibb Co.,* No. 96-689-CIV-ORL-19B, 1998 WL 812318, at *27 (M.D. Fla. Oct. 29, 1998).  In Florida, there are three types of strict products liability: design defects, manufacturing defects, and failures to warn. *Force v. Ford Motor Co.*, 879 So. 2d 103, 106 (Fla. 5th DCA 2004).

*1.  Design and Manufacturing Defects*

Counts II and III are strict liability design and manufacturing defect claims.  In Florida, a strict liability products liability claim must establish "(1) the manufacturer's relationship to the product in question, (2) the unreasonably dangerous condition of the product, and (3) the existence of a proximate causal connection between the condition of the product and the plaintiff's injury." *Cintron v. Osmose Wood Preserving, Inc.*, 681 So. 2d 859, 861 (Fla. 5th DCA 1996); *see also Bailey,* 288 F. App'x at 605 (11th Cir. 2008) ("We are not convinced that Florida law applies a rigid distinction among the various theories of recovery available to plaintiffs under strict products liability such that a plaintiff would be required to expressly plead 'design defect' versus 'manufacturing defect' at the complaint stage.").  Boston Scientific argues Counts II and III should be dismissed because they do not specify what component of the Greenfield Filter was unreasonably dangerous or why that was the case.  The Court disagrees.

Florida has embraced two tests for whether a product is unreasonably dangerous.

*Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 512 (Fla. 2015).  The first is the "consumer expectations" test of Section 402A of the Second Restatement of Torts, which considers whether a product "failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner."  *Id.* at 503.  The second is the "risk utility" test from the Third Restatement, which considers whether "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller . . . and the omission of the alternative design renders the product not reasonably safe."  *Id.* at 505.

Here, the Amended Complaint sufficiently establishes why and how the Greenfield Filter was unreasonably dangerous.  It begins by laying a baseline that the long-term implantation of inferior vena cava filters can cause pulmonary embolisms and deep vein thrombosis.  (Doc. 20 at ¶ 29).  It then states the entire Greenfield Filter was "subject to breakage, collapse, migration, perforation, [and] causing thrombus."  (Doc. 20 at ¶ 54).  Taken as true, these allegations plausibly support the contention that the Greenfield Filter was unreasonably dangerous because it was more hazardous than the ordinary consumer would expect (Doc. 20 at ¶¶ 109, 134), and that the foreseeable risks of harm could be reduced or avoided by the adoption of a removable filter.  (Doc. 20 at ¶¶ 40, 42, 114).  As such, Boston Scientific's arguments fail and Counts II and III survive.

### 2. Failure to Warn

Count IV alleges Boston Scientific is strictly liable for failing to adequately warn about the Greenfield Filter's dangerous complications.  To establish a viable claim for strict liability failure to warn, a pleading must state the defendant (1) manufactured or distributed the product, (2) failed to "adequately warn of a particular risk that was known

or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution," and (3) that the failure proximately caused the plaintiff's injury. *Griffin v. Kia Motors Corp.*, 843 So. 2d 336, 339 (Fla. 1st DCA 2003); *see also Hoffmann-La Roche Inc. v. Mason*, 27 So.3d 75, 77 (Fla. 1st DCA 2009). Boston Scientific argues Count IV should be dismissed because it does not allege how the Greenfield Filter's warnings were inadequate, because adequate warnings were provided, and because Count IV does not satisfy the learned intermediary doctrine. The Court disagrees.

Here, to establish a failure to warn, Davis begins by alleging Boston Scientific manufactured the Greenfield Filter, which was subject to a range of dangerous complications. (Doc. 20 at ¶¶ 135-37, 140). She then claims Boston Scientific knew or should have known about the Greenfield Filter's propensity to cause such complications. (Doc. 20 at ¶¶ 168-170). Despite that knowledge, Davis alleges Boston Scientific failed to adequately warn consumers, the medical community, Davis, or Davis' doctors about the Greenfield Filter's dangerous propensities. (Doc. 20 at ¶¶ 168-170). Instead, Davis alleges Boston Scientific affirmatively downplayed the Greenfield Filter's potentially unsafe complications. (Doc. 20 at ¶ 143). These allegations sufficiently establish a failure to warn.

But Boston Scientific argues that even if the inadequacy of the warning was plausibly pled, Count IV must still fail because it does not establish proximate causation through the learned intermediary doctrine. The Court disagrees. For medical products like the Greenfield Filter, doctors act as an intermediary "between the manufacturer and the consumer, [and] [weigh] the potential benefits against the dangers in deciding whether

to recommend the [product] to meet the patient's needs." *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989). As such, "the duty to warn is directed to [doctors] rather than patients under the learned intermediary doctrine." *Mason*, 27 So.3d at 77 (internal punctuation omitted).

Here, Davis alleges Boston Scientific failed to adequately warn her doctors of the "dangers and risk of harm associated with the use and administration of [the] Greenfield Filter." (Doc. 20 at ¶ 142). She further alleges that neither she nor her physicians would have used the Greenfield Filter had they been adequately warned about the chances that complications could arise its long-term implantation. (Doc. 20 at ¶¶ 164-165). And because she did not receive such warnings, Davis claims she had the Greenfield Filter implanted and sustained an injury. (Doc. 20 at ¶ 172). In so doing, she satisfies the learned intermediary doctrine and sufficiently alleges proximate causation. Therefore, Count IV survives.

## D.  BREACH OF WARRANTIES

Counts V, VI, and VII allege Boston Scientific is liable for breach of express warranty, breach of implied warranty of merchantability, and breach of the implied warranty of fitness because she relied to her detriment on representations in the Greenfield Filter's product brochure, website, and advertisements. Boston Scientific responds these counts should be dismissed because they do not sufficiently allege it was in privity with Davis. The Court agrees.

In Florida, "[p]rivity is required in order to recover damages from the seller of a product for breach of express or implied warranties." *Intergraph Corp. v. Stearman*, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990); *see also Elizabeth N. v. Riverside Grp., Inc.*, 585

So. 2d 376, 378 (Fla. 1st DCA 1991). Davis argues that two cases, *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distributors of Am., Inc.*, 444 So. 2d 1068 (Fla. 3d DCA 1984) and *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009), entitle her to pursue her claims as the recipient of express warranties. Her argument fails.

*Cedars* and *Smith* exhibit opposing interpretations of the outer boundaries of privity in Florida. In *Cedars*, a hospital sued an x-ray manufacturer in state court for breaches of express and implied warranty after it was contacted by the manufacturer's representatives and induced to buy a defective x-ray machine through a third-party seller. 444 So. 2d at 1069, 1072. The court found that even though the hospital purchased the x-ray machine from a third-party, the manufacturer's substantial and direct representations were sufficient to establish privity for express and implied warranty claims. *See id.* at 1072. But the court noted that "[h]ad there been no direct contact between the two parties, [the] contention that there was no privity, and thus no liability for breach of warranties, would be correct." *Id.* at n. 4.

By contrast, the plaintiff in *Smith* sued a chewing gum manufacturer in federal court for breach of express warranty based on a claim that the chewing gum's label contained misleading statements. 663 F. Supp. 2d at 1337-38. The court found that although the plaintiff did not buy the chewing gum directly from the manufacturer, there was sufficient privity because the wrapper contained misleading statements, the plaintiff could not have reasonably relied on a convenience store cashier to contradict the statements, and the plaintiff relied on the statements to his detriment. *Id.* at 1342.

The central issue then is whether the outer boundaries of privity require substantial direct contacts, as in *Cedars*, or mere product labeling, as in *Smith*. Other courts have

embraced the *Cedars* standard.  *See New Nautical Coatings, Inc. v. Scoggin,* 731 So.2d 145, 147 (Fla. 4th DCA 1999) (affirming a breach of warranty claim against a manufacturer when the manufacturer's representative was heavily involved in a transaction where a third-party shop provided the services to a plaintiff); *see also Foster v. Chattem, Inc.,* No. 6:14-CV-346-ORL-37, 2014 WL 3687129, at *3 (M.D. Fla. July 24, 2014); *Karhu v. Vital Pharm., Inc.,* No. 13-60768-CIV, 2013 WL 4047016, at *7 (S.D. Fla. Aug. 9, 2013).  The Court will join that chorus.  As another court in this District has noted, the interests of privity are satisfied by direct contact, but only in the sense of personal contact between the consumer and the manufacturer.  *See Foster,* 2014 WL 3687129, at *3.  The alternative of extending warranty liability to include product label representations would swallow the privity rule entirely.  *See id.*

With that in mind, the Court finds Counts V, VI, and VII do not allege sufficient contacts for viable breach of warranty claims.  Whereas *Cedars* involved substantial direct contact between the hospital and the manufacturer, the only contacts alleged between Boston Scientific and Davis or her doctor took place through its product brochure, website and advertisements.  Such untargeted marketing cannot surmount Florida's privity requirement.  Counts V-VII will be dismissed.[2]

**E.     Fraud**

*1. Fraudulent Misrepresentation*

Count VIII alleges that Boston Scientific fraudulently misrepresented the

---

[2] Boston Scientific also argues that Count V should be dismissed because Davis did not provide it with notice of a breach of any alleged express warranty it had provided to her. But because the Court dismisses the claim on privity grounds, it need not entertain that argument.

Greenfield Filter's safety and efficacy to Davis, her doctors, and the public. The elements of a fraudulent misrepresentation claim in Florida are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Boston Scientific argues that Count VIII should be dismissed because it does not meet the particularity threshold of Rule 9(b). The Court agrees.

Count VIII generally alleges Boston Scientific falsely portrayed the Greenfield Filter as safe and effective for the prevention of pulmonary embolisms and deep vein thrombosis through its website, product brochures, and instructions for use. (Doc. 20 at ¶ 248). Moving into specifics, Boston Scientific's website allegedly claimed Boston Scientific had "[o]ver 30 years of clinical experience," that the Greenfield Filter had "[t]rusted performance, [and] [t]imeless design," that it had "[p]roven [s]tability," "[e]stablished [f]ilter [p]erformance," and that "[f]ilter [d]esign [p]romotes [c]lot [l]ysis." (Doc. 20 at ¶¶ 231, 237-38). Meanwhile, the product brochure claimed the Greenfield Filter's "[r]ecurved hooks are designed to provide protection against penetration." (Doc. 20 at ¶ 240). This is not enough.

For starters, only two statements can be interpreted as factual assertions: that Boston Scientific had "[o]ver 30 years of clinical experience," and that the Greenfield Filter's design "[p]romotes [c]lot [l]ysis." (Doc. 20 at ¶¶ 237-238). But both are insufficient to support a viable fraudulent misrepresentation claim because Count VIII does not detail why the statements are false, or what relevance they have to the Greenfield Filter's safety or efficacy. Instead, it merely states Boston Scientific knew its representations were false.

(Doc. 20 at ¶¶ 248-49).  Rule 9(b) demands more.

The other selections were statements of opinion.  This is most readily indicated because they are introduced by subjective adjectives like "trusted," "timeless," "proven," and "established."  (Doc. 20 at ¶¶ 231, 237).  In Florida, "[a]n action for fraud generally may not be predicated on statements of opinion . . .  but rather must be based on a statement concerning a past or existing fact."  *Mejia v. Jurich*, 781 So.2d 1175, 1177-78 (Fla. 3d DCA 2001).  An exception exists where "the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false."  *Id.*  But even under this exception, the statements are not sufficient to support a fraudulent misrepresentation claim because the Amended Complaint does not explain why they were false or how they relate to the Greenfield Filter's safety or efficacy.  And even though Count VIII states Boston Scientific exclusively possessed information about complications associated with the Greenfield Filter's long-term implantation, it does not state what that information was or how it is relevant here.  (Doc. 20 at ¶ 247).  Count VIII will be dismissed.

*2.  Fraudulent Concealment*

Count IX alleges Boston Scientific fraudulently concealed material information about the Greenfield Filter's known risks.  Fraudulent concealment is similar to actual fraud except that the defendant conceals facts instead of misrepresents them.  *Kish v. A.W. Chesterton Co.*, 930 So. 2d 704, 707 (Fla. 3d DCA 2006).  Boston Scientific argues Count IX should be dismissed because it alleges fraud in a conclusory fashion.  The Court agrees.

The Amended Complaint alleges Boston Scientific "had sole access to material facts concerning the defective nature of the [Greenfield Filter], and its propensity to cause serious and dangerous side effects." (Doc. 20 at ¶ 290). It continues that Boston Scientific deliberately concealed and omitted a swath of information including "that the Greenfield IVC Filters were not safe," "that the Greenfield IVC Filter was manufactured negligently," and "that the Greenfield IVC Filters were not fit for the purpose for which they were used." (Doc. 20 at ¶ 287(a)-(k)). These allegations are problematic because the allegedly concealed information consists of legal conclusions rather than empirically provable facts. Even if that were not the case, Count IV also cites no specific concealed information that would support the alleged conclusions. For instance, it cites no specifically concealed materials that would indicate the Greenfield Filter was not safe, or that would show it was manufactured negligently, or that it was not fit for the purpose for which it was used. Because Count IX fails to allege specific facts concealed by Boston Scientific, it will be dismissed.

*3. Negligent Misrepresentation*

Count X alleges Boston Scientific negligently misrepresented to Davis and her doctors that the Greenfield Filter had been tested and found to be a safe and effective form of therapy. In Florida, a plaintiff seeking to establish negligent misrepresentation must plead

> (1) [a] misrepresentation of material fact; (2) the representor . . . ma[d]e the representation without knowledge as to its truth or falsity, or . . . under circumstances in which he ought to have known of its falsity; (3) the representor . . . intend[ed] that the misrepresentation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

*Souran v. Travelers Ins. Co.*, 982 F.2d 1497 (11th Cir.1993) (quoting *Hoon v. Pate Constr. Co., Inc.*, 607 So.2d 423, 427 (Fla. 4th DCA1992)).  Boston Scientific argues that Count X's claim should be dismissed because it is pled in a conclusory fashion.  The Court agrees.

Negligent misrepresentation allegations are subject to Rule 9(b)'s heightened particularity standard.  *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014).  In addition, a negligent misrepresentation claim must fail if an investigation by the recipient of the information would have revealed the falsity of the communication.  *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 339 (Fla. 1997).  In other words, a recipient of an erroneous representation cannot "hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error."  *Butler*, 44 So. 3d at 105 (citations omitted).  These standards doom Count X because it relies on the same alleged misrepresentations found wanting in Count VIII.  Like Count VIII, Count X will be dismissed.

### F.     The Florida Deceptive and Unfair Trade Practices Act

Next, Count XI alleges Boston Scientific violated FDUTPA by engaging in "continuous and pointed marketing activity" that fails "to disclose . . . known serious risks and warnings to consumers."  (Doc. 20 at ¶¶ 326, 328).  "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008).  But Boston Scientific argues Count XI should be dismissed because FDUTPA does not apply in this case.  The Court agrees.

Though FDUTPA prohibits "unfair or deceptive acts or practices in the conduct of

any trade or commerce," it does not apply to claims for personal injury or death. Fla. Stat. §§ 501.204(1), 501.212(3). Here, Davis claims that Boston Scientific "acted in a deceptive and unfair manner" when it marketed, labeled, and sold the Greenfield Filter. (Doc. 20 at ¶ 329). She further alleges this activity caused her to have the Greenfield Filter implanted, which later caused her to experience deep vein thrombosis. (Doc. 20 at ¶¶ 50, 334). As a result, she alleges she incurred additional medical treatment and bills. (Doc. 20 at ¶¶ 335-36). These allegations fail because they all hinge on a personal injury claim. Because such claims are excluded under FDUPTA, Count XI will be dismissed.[3]

## G. Punitive Damages

Last, the Amended Complaint asks the Court to award punitive damages. In Florida, punitive damages can only be awarded where a pleading provides a "reasonable basis" for an allegation that a party acted with "intentional misconduct or gross negligence." Fla. Stat. § 768.72(1)-(2); *see also Gerlach v. Cincinnati Ins. Co.*, No. 2:12-CV-322-FTM-29DNF, 2012 WL 5507463, at *2 (M.D. Fla. Nov. 14, 2012) (citing *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999), opinion vacated on other grounds, 204 F.3d 1069 (11th Cir. 2000)). Conclusory allegations are insufficient to provide a reasonable basis, and instead "a plaintiff must plead specific acts committed by a defendant." *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1341 (11th Cir. 2001). "Intentional misconduct means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct,

---

[3] Boston Scientific also argues Count XI should be dismissed because it is not plausibly alleged and because the FDUTPA safe harbor bars the claim. Because Count XI is dismissed on statutory grounds, these arguments need not be confronted.

resulting in injury or damage." Fla. Stat. § 768.72(2)(a) (internal quotes omitted). "Gross negligence means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." *Id.* at § 768.72(2)(b) (internal quotes omitted).

Here, Counts I-IV of the Amended Complaint remain. Boston Scientific allegedly knew or should have known that its actions in relation to remaining Counts were dangerous but still failed to remedy them. (Doc. 20 at ¶¶ 90, 110, 116, 132, 140, 157, 338). The Amended Complaint also alleges Boston Scientific acted willfully or with reckless indifference. (Doc. 20 at ¶¶ 93, 143, 158, 337-39). Taken as true, these allegations support a punitive damages claim at this stage.

Accordingly, it is now

**ORDERED:**

Defendant Boston Scientific's Motion to Dismiss (Doc. 21) is **GRANTED IN PART and DENIED IN PART**.

1. The Motion is **GRANTED** as to Counts V-XI, and those Counts are **DISMISSED**. The Motion is **DENIED** in all other respects.

2. Davis must file a Second Amended Complaint on or before May 18, 2018 that is consistent with this Opinion and Order. Boston Scientific has fourteen days thereafter to file an Answer.

**DONE** and **ORDERED** in Fort Myers, Florida this 11th day of May, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record